IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SARAH ADAMS, | ) | CASE NO. 1:13 CV 1921 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

**A.      Nature of the case and proceedings**

Before me[1] is an action by Sarah Adams under 42 U.S.C. § 405(g) for judicial review

of the final decision of the Commissioner of Social Security denying her application for

supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of

the administrative record.[4] Under my initial[5] and procedural[6] orders, the parties have briefed

---

[1] ECF # 18. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 14.

[4] ECF # 15.

[5] ECF # 6.

[6] ECF # 16.

their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

**B.  Background facts and decision of the Administrative Law Judge ("ALJ")**

Adams received disability benefits as a child, and according to law, was re-evaluated for benefits upon turning 18 years of age.[11] At the time of the hearing Adams, then 20 years old,[12] was residing with her aunt and taking medication for depression.[13] Although she dropped out of school in the 10th grade, she was "looking into getting a GED."[14]

The ALJ, whose decision became the final decision of the Commissioner, found that Adams had the following severe impairments: attention deficit hyperactivity disorder, night owl syndrome, and depression.[15]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Adams's residual functional capacity ("RFC"):

---

[7] ECF # 22 (Adams's brief); ECF # 23 (Commissioner's brief).

[8] ECF # 23-1 (Commissioner's charts); ECF # 22-1 (Adams's charts).

[9] ECF # 21 (Adams's fact sheet).

[10] ECF # 25.

[11] Transcript ("Tr.") at 13.

[12] *Id.* at 153.

[13] *Id.* at 18.

[14] *Id.*

[15] *Id.* at 15.

After careful consideration of the entire record, I find that since November 1, 2010, Ms. Adams has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: no complex tasks; limited to simple routine repetitive tasks; limited to low stress work with no high production quotas or piece work; precluded from work involving arbitration, confrontation or negotiation; precluded from supervision of high stress work; limited to superficial interaction with co-workers; and precluded from interaction with the public.[16]

As a child, Adams has no past relevant work.[17]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Adams could perform.[18] The ALJ, therefore, found Adams not under a disability.[19]

## C.    Issues on judicial review and decision

Adams asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Adams presents the following issues for judicial review:

- The ALJ failed to follow the requirements applicable to handling the opinion of a treating physician when he did not make a specific weight assignment regarding the opinion of Adams's treating physician Dr. Shulga nor give other than cursory reasons for rejecting that

---

[16] *Id.* at 17.

[17] *Id.* at 20.

[18] *Id.* at 21.

[19] *Id.*

opinion as to functional limitations.[20] Did the ALJ commit reversible error in his treatment of Dr. Shulga's opinion?

- The ALJ did not incorporate into his hypothetical to the VE or the ultimate RFC finding the limitations opined by Dr. Shulga about Adams's ability to complete an eight-hour workday, five days a week. Absent these limitations, does the VE's answer to the ALJ's hypothetical constitute substantial evidence supporting the step five finding?[21]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, the case must be remanded for further administrative proceedings.

## Analysis

### A.  Standards of review

### 1.  *Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant

_____

[20] ECF # 22 at 8-11.

[21] *Id.* at 11-12.

-4-

evidence as a reasonable mind might accept as adequate to support a conclusion.' "

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[22]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[23] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[24]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2.      *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from

---

[22] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[23] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[24] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[25]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[26]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[27] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[28]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[29] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[30] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[31] In deciding if such

---

[25] 20 C.F.R. § 416.927(d)(2). The companion regulation for disability insurance benefits applications is § 404.1527(d)(2). Adams filed only an application for supplemental security income benefits.

[26] *Id.*

[27] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[28] *Id.*

[29] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[30] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[31] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[32]

In *Wilson v. Commissioner of Social Security*,[33] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[34] The court noted that the regulation expressly contains a "good reasons" requirement.[35] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[36]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[37] It drew a distinction between a

---

[32] *Id.* at 535.

[33] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[34] *Id.* at 544.

[35] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[36] *Id.* at 546.

[37] *Id.*

regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[38] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[39] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[40]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[41] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[42] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[43] *Blakley v. Commissioner of Social Security*,[44] and *Hensley v. Astrue*.[45]

---

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[42] *Id.* at 375-76.

[43] *Rogers*, 486 F.3d at 242.

[44] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[45] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[46] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[47] These factors are expressly set out in 20 C.F.R. § 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 416.927(d)(2)(i)-(ii), (3)-(6).[48] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[49]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[50] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[51] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[52] specifically the frequency of

---

[46] *Gayheart*, 710 F.3d at 376.

[47] *Id.*

[48] *Id.*

[49] *Rogers*, 486 F.3d at 242.

[50] *Gayheart*, 710 F.3d at 376.

[51] *Id.*

[52] *Id.*

the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[53] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[54]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.

> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[55]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[56] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[57] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating

---

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] *Rogers*, 486 F.3d 234 at 242.

[57] *Blakley*, 581 F.3d at 406-07.

-10-

physician disagrees with the opinion of a non-treating physician[58] or that objective medical evidence does not support that opinion.[59]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[60] The Commissioner's *post hoc* arguments on judicial review are immaterial.[61]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

---

[58] *Hensley*, 573 F.3d at 266-67.

[59] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[60] *Blakley*, 581 F.3d at 407.

[61] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

- the failure to mention and consider the opinion of a treating source,[62]

- the rejection or discounting of the weight of a treating source without assigning weight,[63]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[64]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[65]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[66] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[67]

The Sixth Circuit in *Blakley*[68] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[69] Specifically, *Blakley* concluded that "even if we were to agree

---

[62] *Blakley*, 581 F.3d at 407-08.

[63] *Id.* at 408.

[64] *Id.*

[65] *Id.* at 409.

[66] *Hensley*, 573 F.3d at 266-67.

[67] *Friend*, 375 F. App'x at 551-52.

[68] *Blakley*, 581 F.3d 399.

[69] *Id.* at 409-10.

that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[70]

In *Cole v. Astrue*,[71] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[72]

**B.    Application of standards**

This case challenging non-compliance with the rubric of the treating physician rule once again requires me to sift through an ALJ's decision searching for fragmentary observations or findings that might then be pieced together into a supportable analysis of the treating physician's opinion.

The case involves the handling of the opinion of Irene Shulga, M.D., a psychiatrist who saw Adams between September of 2010 and January of 2012. The record shows that Dr. Shulga first saw Adams in September of 2010,[73] conducting an initial psychiatric

---

[70] *Id.* at 410.

[71] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[72] *Id.* at 940.

[73] Tr. at 256-58. Adams's brief gives the date of this initial evaluation as October 3, 2010 (ECF # 22 at 3), but that was the date the evaluation was electronically signed by Dr. Shulga. The date of the evaluation itself was September 29, 2010. Tr. at 256.

evaluation of Adams for Bridgeway, Inc., at the time a Cleveland-based network of mental health service providers.[74] In that evaluation, Dr. Shulga recounted what Adams told her about her symptoms and documented the results of her mental status examination of Adams. In particular, Dr. Shulga's own examination showed that Adams's speech was "non-spontaneous" but coherent; her affect was "blunted;" and her attention, concentration, insight, and judgment were all found to be "fair."[75] Dr. Shulga diagnosed "depressive disorder, NOS 311; dysthymia; ADD, inattentive type;" and provided a GAF score of 60.[76] Dr. Shulga prescribed a "maintenance" plan of treatment focused on observing Adams for symptoms of ADD and considering the use of Prozac and trazodone – medications which "had been helpful in the past."[77]

From this initial visit, the record shows that Dr. Shulga saw Adams four times in 2011.[78] In addition, she was seen five times by staff supervised by Dr. Shulga.[79] Thus, by the time Dr. Shulga delivered her assessment of Adams's diagnosis, symptoms, treatment, and functional capacity in January of 2012; or little more than a year after Dr. Shulga began

---

[74]  *See*,  www.crainscleveland.com/article/20120329/FREE/120329749/nonprofit-bridgeway-to-close.

[75] Tr. at 257.

[76] *Id.*

[77] *Id.*

[78] *Id.* at 319-20 (1/19/11); 317-18 (1/31/11); 347-48 (2/28/11); 364-67 (6/15/11).

[79] *Id.* at 362-63 (6/17/11); 360-61 (7/20/11); 356-58 (9/6/11); 355-58 (10/20/11); 352-54 (11/18/11).

treating Adams; Dr. Shulga had the benefit of direct experience with Adams for approximately a year and of treatment and clinical notes from nearly every month during that time.

The Commissioner does not dispute this, or that Dr. Shulga clearly qualifies as a treating source under the regulations.[80] Thus, Dr. Shulga's opinion was entitled to be treated and evaluated under the treating source/good reasons rubric extensively developed by regulations and court decisions, which is discussed in detail above.

The ALJ did not comply with the treating source/good reasons rule as to Dr. Shulga.[81] As the text of the opinion makes clear, the ALJ never directly identified Dr. Shulga as a treating source as required under the regulations and by controlling case authority, nor did he assign any specific weight to Dr. Shulga's opinion as to Adams's functional capacity, something which also is specifically required. As such, and on the face of the opinion itself,

---

[80] http://www.ssa.gov/disability/professionals/bluebook/general-info.htm. A treating source is a claimant's own physician, psychologist, or other acceptable medical source who has provided the claimant with medical treatment or evaluation and has or has had an ongoing treatment relationship with the claimant. The treating source is usually the best source of medical evidence about the nature and severity of an individual's impairment(s).

If an additional examination or testing is needed, SSA usually considers a treating source to be the preferred source for performing the examination or test for his or her own patient.

The treating source is neither asked nor expected to decide whether the claimant is disabled. *However, a treating source will usually be asked to provide a statement about an adult claimant's ability, despite his or her impairments, to do work-related physical or mental activities* or a child's functional limitations compared to children the same age who do not have impairments. (Emphasis added.)

[81] The ALJ mis-identifies Dr. Shulga as "Dr. Hulga" in the only direct reference made to this treating source in the opinion. Tr. at 19.

-15-

the Commissioner is simply factually incorrect to say that "in accordance with the governing regulations and Sixth Circuit case law, the ALJ properly evaluated the opinion of the treating psychiatrist, Dr. Shulga."[82] While the Commissioner does argue that the errors are of no consequence, it is important to be clear from the beginning that the ALJ's analysis in the opinion was not in compliance with the procedure established in the regulations.

In addition, there are no other treating physician opinions at issue here. While there is a state agency reviewing opinion that the ALJ discussed, and that discussion will be reviewed here below, Dr. Shulga's opinion stands alone and uncontradicted by any other treating source, making its proper treatment of some importance to Adams's claim.

That said, the Commissioner argues that the ALJ's decision to give less than controlling weight to Dr. Shulga's opinion – which, as discussed, was never explicitly made – can nevertheless be justified now by the fact that Dr. Shulga's opinion was in some unspecified conflict with the overall record.[83] To that point, I observe that the forty-eight individual citations to the record presented by the Commissioner as proof that Dr. Shulga's opinion is inconsistent with the record[84] do not reflect any analysis, judgment, or comparison made by the ALJ *in the opinion*, but are the independent, *post-hoc* analyses, judgments, and comparisons of the Commissioner's counsel seeking to insert supportable reasons from the record into the opinion that were not placed there by the ALJ himself. As such, this is the

---

[82] ECF # 23 at 11.

[83] *Id.*

[84] *Id.* at 11-12.

very definition of impermissible *post-hoc* rationalization that undermines any meaningful judicial review of *the ALJ's opinion*, and so cannot support any finding by the reviewing court affirming that decision.

I turn now to the actual explanation given by the ALJ in the opinion for the implied decision to not give controlling weight to Dr. Shulga's opinion – that Dr. Shulga "listed [her] diagnoses but did not explain in any depth the conclusion that Ms. Adams was not able to sustain an 8-hour workday, 5 days a week."[85] The ALJ here seems to imply that the treating physician has a duty in his opinion to explain in a single comprehensive statement how the opinion is supported by the physician's prior findings. But the test for whether or not to accord controlling weight to a treating source opinion, as noted above, is whether the opinion is well supported by diagnostic and clinical techniques and is not inconsistent with the other evidence in the case record. The test manifestly does not include an articulation requirement concerning how the opinion conclusions are arranged in connection with the supporting evidence.[86]

---

[85] Tr. at 19.

[86] It is an irony that appears to have escaped the Commissioner's attention that while she argues that Dr. Shulga's opinion must be rejected because it did not contain a unified statement clearly explaining the opinion's conclusion by direct reference to all of its supporting evidence, she does so by urging that I affirm a decision which itself plainly does not contain a unifying statement clearly explaining its conclusion by direct reference to the supporting reasons.

The ALJ took note that Dr. Shulga opined that Adams had "poor coping skills and her symptoms of anxiety and depression will [be] exacerbated in [a] usual work setting."[87] The ALJ further took partial note of Dr. Shulga's opinion, which stated in full, that Adams would need "plenty of individual and group therapy prior [to] considering work placement."[88] The ALJ also partially noted Dr. Shulga's finding that Adams "had been reluctant to start individual supportive therapy for her symptoms,"[89] while not mentioning Dr. Shulga's finding from the previous page of her opinion that this reluctance was only in the earliest weeks of Adams's treatment with Dr. Shulga but that "[s]ince June 2011 [Adams] attended appointment every months."[90]

Thus, rather than proving that Dr. Shulga's functional opinion of January 2012 lacks a clearly stated basis for the conclusion, a review of the two-page opinion itself shows that it is internally consistent in describing Adams as having anxiety, depression, and anxiety/ panic attack symptoms caused by her diagnosed depression and AD/HD. It is further consistent in stating that these symptoms, when viewed in connection with Adams's poor coping skills, would be made worse in a "usual work setting"[91] – an opinion based, at least in part, on Dr. Shulga's professional expertise and on the fact that she had seen Adams

---

[87] Tr. at 19.

[88] *Id.* (partially quoting *Id.* at 396).

[89] *Id.* at 19 (quoting *Id.* at 396).

[90] *Id.* at 395.

[91] *Id.* at 396.

directly, or through a subordinate, nine separate times in the course of a year, and the record provides treatment notes from those visits.

Significantly, the ALJ makes no mention at all of Dr. Shulga's last note in her opinion that "[i]n order to address her symptoms Ms. Adams has been functioning on [unreadable] level and psychological testing is appropriate."[92] Thus, far from concluding either that any remaining symptoms of disability are due to Adams being uncooperative with her treatment, as the ALJ seems to suggest and as was directly refuted by Dr. Shulga's own note earlier in her opinion that is quoted above, or that Adams's description of her symptoms are not credible, which the ALJ also does by attacking Adams's credibility on the issue of her insomnia and inferring that all other complaints are equally incredible,[93] the last note in Dr. Shulga's opinion reflects a finding of Adams's treating physician that psychological testing is now appropriate to find out why Adams has been functioning as she has been.

Accordingly, to the extent that the ALJ here has given reasons for his presumed or implied decision to give less than controlling weight to the opinion of Adams's treating

---

[92] *Id.*

[93] *Id.* at 18, 20. I am also concerned that the ALJ relied on a state agency reviewer's report of November, 2010, for support of his finding that Adams's complaints were only partially credible. *Id.* at 18. First, this state agency report is more than a full year before Dr. Shulga's report and so cannot possibly have seen Dr. Shulga's opinion of January, 2012, or the many treatment notes compiled in late 2010 and the whole of 2011. Further, the ALJ must be very careful when giving, or appearing to give, greater weight to the opinion of a reviewing source than a treating one. That is particularly the case when, as here, the issue involved is the credibility of the claimant's reports of her symptoms and the treating source's last comment in her last opinion is that psychological testing may be needed to find out why the claimant has been functioning as she has been.

psychiatrist, I find, for the reasons stated above, that this decision is not supported by substantial evidence. Simply put, the reasons given by the ALJ are not good reasons and, just as important, they do not address the full scope of Dr. Shulga's opinion which, as noted, is more extensive and far-reaching than what the ALJ summarized it to be.

Having reached this decision on the first issue presented for review, I do not need to address the second issue concerning the scope of the hypothetical question posed to the VE.

## Conclusion

For the foregoing reasons, the Commissioner's decision denying Sarah Adams's application for supplemental security income is reversed as not supported by substantial evidence, and the matter is remanded for further administrative proceedings in accord with this opinion.

IT IS SO ORDERED.

Dated: August 4, 2014                                s/ William H. Baughman, Jr.
                                                     United States Magistrate Judge